CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUN 0 8 2010

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN D. EASTWOOD, | ) |
| | ) |
| Plaintiff, | ) Case No. 7:10CV00096 |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| | ) |
| MS. LEE KICKLIGHTER, ET AL., | ) By: Glen E. Conrad |
| | ) United States District Judge |
| Defendants. | ) |

Plaintiff John D. Eastwood, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Eastwood alleges that prison officials at Coffeewood Correctional Center violated his constitutional rights in relation to his dismissal from a vocational class. Upon review of the record, the court finds that the complaint must be summarily dismissed.

## Background

Eastwood's submissions provide the following sequence of events from which his claims arise. In June 2009, Eastwood had been taking a vocational course at Coffeewood, the Optical Lens program. Defendant Kicklighter was the instructor. On June 15, 2009, Eastwood chose to attend the one day Kairos religious service instead of attending the Optical Lens program, scheduled during the same time period. The Kairos service had been originally scheduled on May 11, 2009, but because of an institutional lockdown during that time, the service was rescheduled for June 15, 2009 from 8:30 a.m. to 4:30 p.m.

When Eastwood attempted to return to class on June 17, 2009, Kicklighter notified the correctional officer in the area not to allow Eastwood to attend the class. He received a notification indicating that his termination was pursuant to Operating Procedure 861.1-122C ("Under the influence of drugs"). Eastwood states that he was never tested for drug use and never received a disciplinary charge for such behavior. Kicklighter later notified Eastwood's building counselor that Eastwood was terminated from the class because of excessive absences ("26 days of missed class" since January of 2009). Eastwood asserts that his timesheets, indicating that he was paid his full allotment of $0.23 per hour for attending the Optic Lens classes, disprove Kicklighter's assertion that he had 26 absences. The chaplain spoke with Kicklighter and reported to Eastwood that Kicklighter had terminated him from class for other reasons, besides his attendance of the Kairos service, without indicating what the other reasons were. Eastwood's building counselor informed him that Kicklighter had reported that she terminated Eastwood from class because of his poor performance in class. Eastwood told the counselor that he had a 95 or better on all his assignments and tests and was not missing any assignments. Eastwood claims that Kicklighter never discussed his classroom performance with him before terminating him.

In July, Eastwood met with Mr. Wright, Regional Principal for Department of Correctional Education (DCE), and Kicklighter. They presented him with a memo dated July 10, 2009, with the heading of "Conditional Reinstatement," stating that a review of his attendance indicated that he had only two unexcused absences, but also had numerous period absences. (Compl. Attach. 8.) The memo stated that Eastwood would be allowed to attend first and second periods of the Optical Lens program until the "instructor [Kicklighter] deem[ed] that attendance

- 2 -

and interest [met] program expectation." (Id.) At the end of this meeting, Kicklighter also asked Eastwood to declare his religion. On July 12, 2009, Eastwood wrote a letter, withdrawing from the conditional reinstatement and demanding "Full Reinstatement and placement into the class with the same status prior to 6/15/09, which was the date [he] was unduly terminated for attending Kairos, a religious service." (Compl. Attach. 9.)

When Eastwood pursued his complaint of religious discrimination through the prison grievance procedure, the officers who responded did not address this allegation, instead finding that the issue of his termination from class was not grievable because it involved an application of DCE policy. Eastwood asserts that the failure to address the issue he raised demonstrated conspiracy to "facilitate [Kicklighter's] lies and continue to discriminate against [him] due to [his] religion." As relief in this lawsuit, Eastwood seeks monetary damages and termination of the officers who allegedly violated his constitutional rights.

Upon receiving Eastwood's complaint, the court granted him an opportunity to amend to provide additional factual details about how and when Kicklighter learned of the reason that he missed a day of the program. He responded,[1] stating that inmates who wish to attend a religious program at Coffeewood must complete a request form to be added to the master list of inmates approved for participation in the desired event. The completed master list is circulated throughout the prison for tracking purposes. He asserts that his name would have been on the

---

[1] Attached to Eastwood's response are pages for his counselor's case management notes, dated June 16, 2009, the day that Eastwood was suspended from the program. The notes appear to indicate that "per Ms. Kicklighter" inmates are "supposed to notify instructor per policy" regarding absences. (Plff's Response, Attach. p. 5.)

master list of inmates approved for Kairos on June 15, 2009 and that this list would have been

available to Kicklighter before Kairos occurred.

## Discussion

To state a cause of action under § 1983, a plaintiff must establish that he has been

deprived of rights guaranteed by the Constitution or laws of the United States and that this

deprivation resulted from conduct committed by a person acting under color of state law.  West

v. Atkins, 487 U.S. 42 (1988).  A complaint filed by an inmate challenging the conduct of an

"officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the

complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."  In

reviewing the case for possible summary dismissal, the court must accept allegations in the

complaint as true and draw all reasonable factual inferences in the plaintiff's favor.  See

De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003).  The factual allegations in the

complaint must contain "more than labels and conclusions" and "must be enough to raise a right

to relief above a speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Although educational programming may serve an important rehabilitative function, the

law is well settled that prisons are not constitutionally required to provide such programming and

that an inmate has no constitutionally protected right to participate in such a program if provided.

Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (Eighth Amendment); Moody v. Daggett, 429

U.S. 78, 88 n .9 (1976) (due process); Women Prisoners of Dist. of Columbia Dep't of Corr. v.

District of Columbia, 93 F.3d 910, 927 (D.C. Cir. 1996); Alberti v. Klevenhagen, 790 F.2d 1220,

1228 (5th Cir. 1986).  Thus, prison officials could legally deny Eastwood and other inmates

access to educational programs, like the one in which he participated, for any reason without

offending constitutional principles. See <u>Women Prisoners</u>, 93 F.3d at 927 (applying rational basis test of <u>Turner v. Safely</u>, 482 U.S. 78 (1987) to claim that prisons for female inmates did not provide educational programming equivalent to programs provided for male inmates). Thus, the instructor's decision to terminate Eastwood from the program, for whatever reason, did not deprive him of anything to which he was constitutionally entitled.

Eastwood's primary concern in his case appears to be that he feels he was punished for exercising his constitutional right to practice his religious beliefs. Such inmate claims of official retaliation are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner" conduct. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996); <u>Adams v. Rice</u>, 40 F.3d 72, 74 (4th Cir. 1994) . To succeed on his claim, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." <u>Adams</u>, 40 F.3d at 75. "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a §1983 retaliation claim. <u>Wagner v. Wheeler</u>, 13 F.3d 86, 91 (4th Cir. 1993). The inmate must also allege facts indicating that, as a result of the retaliatory action, he suffered some adverse impact on the continued exercise of his constitutional rights. <u>ACLU of Md., Inc. v. Wicomico County, Md.</u>, 999 F.2d 780, 786 (4th Cir. 1993). Conclusory assertions that official action was taken to punish the inmate for exercising his constitutional right are not sufficient to support a § 1983 claim. <u>Adams</u>, 40 F.3d at 74.

Eastwood fails to forecast evidence on which he could prove a retaliation claim against Kicklighter. First, he alleges no evidence on which he could demonstrate that his exercise of

religious beliefs motivated her decision to terminate him from the course. The simple timing of the termination is not sufficient to prove this element of the claim. Even assuming that Kicklighter saw the master list indicating that Eastwood was approved to attend Kairos, he offers no evidence that he informed her personally of his intention or asked her if he could be excused from class to attend the event. Thus, it is just as likely that Kicklighter terminated him because of the unexcused absence, rather than because of the religious nature of the event he chose to attend during class time. The various reasons identified by Kicklighter for the termination, all of which Eastwood disputes, and her request that Eastwood declare his religion also do not demonstrate that she was attempting to cover up some otherwise unproven bias against his religion. The only fiber that connects the evidence to which Eastwood points is his speculation that Kicklighter bears some prejudice against his religion, and such speculation is not sufficient to prove retaliatory motive.

Second, Eastwood's allegations do not demonstrate that Kicklighter's action had any adverse effect whatsoever on his continued ability to exercise his religious beliefs. Within a few days, she offered him an opportunity to be reinstated to the Optic Lens program, at first conditionally, and then fully, once he had proved his commitment to complete the course and comply with its policies. Indeed, his submissions offer no indication that in the future, Kicklighter would refuse to grant him permission to attend Kairos, if he asked her before

skipping class.[2] He offers nothing on which he could demonstrate that Kicklighter's action hampered his ability to practice his beliefs after June 15, 2009. Because Eastwood alleges no facts on which he could prove either element of a claim that Kicklighter terminated him in retaliation for his exercise of religious rights, this aspect of his complaint must be dismissed, pursuant to § 1915A(b)(1).

Finally, Eastwood's allegations also fail to state any actionable § 1983 claim against the other defendants. Because inmates have no constitutional right to a prison grievance procedure, the defendants' alleged failure to respond appropriately to Eastwood's grievances about this matter cannot support a claim that their actions deprived him of constitutional rights. Adams, 40 F.3d at 75. Moreover, because he fails to demonstrate that Kicklighter's actions violated his constitutional rights in any way, his claim that the other defendants conspired to "facilitate" her alleged misconduct must also fail.

## Conclusion

For the stated reasons, the court concludes that Eastwood's complaint must be dismissed without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim upon which relief can be granted. An appropriate order will be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days

---

[2] Similarly, Eastwood's allegations fail to state any claim that Kicklighter's action imposed a substantial burden on his continued right to free exercise of his religious beliefs, so as to state any First Amendment claim. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981) (holding that for First Amendment purposes, a "substantial burden" on religious beliefs is one which "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs").

of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This ___8th___ day of June, 2010.

_____
United States District Judge